IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> **MALCOLM TORRES**, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CRIMINAL NO. 19-CR-03333-WJ <br> ) <br> ) <br> ) <br> ) <br> ) |

UNITED STATES' AMENDED NOTICE
OF INTENT TO OFFER EXPERT WITNESS TESTIMONY

Pursuant to Fed. R. Crim. P. 16(c), the Court's standing discovery order, and the Sixth Stipulated Scheduling Order (Doc. 87), the United States hereby gives notice that it intends to introduce the following testimony during trial, which may arguably be considered as expert testimony. The United States submits that all such evidence is relevant to the issues to be tried before the jury in this case. Further, the United States submits that this testimony is admissible evidence under Fed. R. Evid. 702 and 703, and that the witnesses have a reliable basis in knowledge and experience in their respective professional disciplines. As grounds for this notice, the United States submits the following:

**Office of the Medical Examiner**

1.  Dr. Nicole R. Jackson, MD, MPH is a pathologist, formerly employed by the Office of the Medical Investigator in Albuquerque, New Mexico and now employed by the King County Medical Examiner's Office. Dr. Jackson performed the autopsy on Jane Doe, the findings of which are detailed in the Report of Findings dated April 13, 2020. That report has been previously has

been disclosed to the Defendant (Bates 020911 – 020954).  Therein, Dr. Jackson detailed the summary and opinions gleaned from the autopsy, including the blunt head trauma, blunt neck trauma, and the blunt torso trauma suffered by Jane Doe.  Dr. Jackson will further testify regarding the results of the sexual assault examination conducted on Jane Doe, the results of which are detailed in the aforementioned report.  Dr. Jackson will testify that the cause of death was blunt head trauma and the manner of death was homicide.   Further, Dr. Jackson will testify that the examination revealed no supportive findings of drowning.  Dr. Jackson will testify at trial regarding the procedures, observations, testing, and analysis conducted on Jane Doe's body to include the nature, extent, and location of her injuries.  Further, Dr. Jackson will testify about the methods and protocols employed by the Office of the Medical Investigator during the course of autopsies.

Dr. Jackson's testimony may include her expert opinions or specialized knowledge regarding this matter, derived from her education, training, and professional experience.  Dr. Jackson's curriculum vitae, which details her training, experience, and list of publications has previously been disclosed to the Defendant.  (Bates 24708 – 24721).  The list of cases in which Dr. Jackson has testified as an expert at trial or deposition are as follows:

1. Case OMI 2019-5210; Decedent CARTER, Preliminary hearing March 26, 2020;
2. Case OMI 2019-5028; Decedent ESQUIBEL Preliminary hearing April 24, 2020;
3. Case OMI 2019-4420 MADRID; Preliminary hearing with DA Diana Luce June 4, 2020
4. Case OMI 2020-1904; Preliminary hearing with family's paralegal, Shannon Kennedy, June 9, 2020;
5. Case OMI 2019-7387; Decedent ROOKS;  Preliminary hearing June 11, 2020;

6. Case OMI 2019-4353;  Decedent DIAZ;  (State of New Mexico vs. Donald Duquette); preliminary hearings August 19, 2022 and October 6, 2022;

7. Case CCME 2021-1390; Decedent ADAMOWSKI (Estate of Adamowski v. E&G Road House, et al; Case No. 21 L 11222),; deposition via Zoom November 10, 2022.

<u>Electronically approved on December 23, 2022.</u>
Dr. Nicole R. Jackson

2.      Dr. Karen Cline-Parhamovich, DO, DABP, who is currently employed at the Pierce County, Washington, Medical Examiner's Office, was the Assistant Chief Medical Investigator for the Office of the Medical Investigator in the State of New Mexico who supervised the performance of the autopsy on Jane Doe, the findings of which are detailed in the Report of Findings dated April 13, 2020.  That report has been previously has been disclosed to the Defendant (Bates 020911 – 020954).  That report detailed the summary and opinions gleaned from the autopsy, including the blunt head trauma, blunt neck trauma, and the blunt torso trauma suffered by Jane Doe.  Dr. Cline-Parhamovich will testify about those findings, and further testify about the  results of the sexual assault examination conducted on Jane Doe, the results of which are detailed in the aforementioned report.  Dr. Cline-Parhamovich will testify that the cause of death was blunt head trauma and the manner of death was homicide.   Further, Dr. Cline-Parhamovich will testify that the examination revealed no supportive findings of drowning.  Dr. Cline-Parhamovich will testify at trial regarding the procedures, observations, testing, and analysis conducted on Jane Doe's body to include the nature, extent, and location of her injuries.  Further, Cline-Parhamovich will testify about the methods and protocols employed by the Office of the Medical Investigator during the course of autopsies.

Dr. Cline-Parhamovich's testimony may include her expert opinions or specialized knowledge regarding this matter, derived from her education, training, and professional experience. Dr. Cline-Parhamovich's curriculum vitae, which details her training, experience, and list of publications, has previously been disclosed to the Defendant. The list of cases in which Dr. Jackson has testified as an expert at trial or deposition are as follows:

1. 10/7/2020   Terrence King        Pierce County, WA
2. 4/28/2021   Daquan Foster        Pierce County, WA
3. 7/8/2021    Abraham Gomez        Las Cruces, NM
4. 3/2/2022    Joseph Garcia        District of New Mexico
5. 3/8/2022    Lawrence Jeffries    Pierce County, WA
6. 10/11/22    Greg Richards        Pierce County, WA

<u>Electronically approved on December 21, 2022.</u>
Dr. Karen Cline-Parhamovich

**<u>DNA Testing</u>**

Michelle Martin is a forensic DNA examiner employed by the Federal Bureau of Investigation. Ms. Martin authored two laboratory reports, the first dated March 11, 2020 (Bates 23608-23618) and the second dated May 15, 2020 (Bates 23188-23617) in which she explained how the FBI subjected a series of items to DNA and serological testing at the FBI laboratory. Ms. Martin's reports details the items she tested, the results she obtained (including the statistical analysis), and the underlying data. Ms. Martin will testify to the methods and procedures employed by the laboratory to obtain those results. The United States notifies that Defendant of its intent to admit all the results discussed in both reports, most notably the results obtained from Item 33

(sweater), Item 34 (washcloth), Item 69 (boot), Item 70 (boot), Item 73 (underwear from Toyota Tacoma), Item 88 (dress), and Item 89 (carpet from floorboard of Ford F-250).  Such testimony will include the statistical analysis conducted by the FBI as reflected in the laboratory report.  Ms. Martin's curriculum vitae, which details her education, training, experience, specialized knowledge, publications, and recent testimony has previously been disclosed to the Defendant (Bates 023620 – 023622).

      Electronically approved on December 21, 2022.
      Michelle Martin

      Lara Adams is a forensic DNA examiner employed by the Federal Bureau of Investigation.  Ms. Adams will testify about testing she conducted on various items of evidence that law enforcement recovered during the investigation of this case.  Ms. Adams' report that details the items she tested, the results she obtained (including the statistical analysis), the underlying raw data, and the methods that she employed to obtain those results have been previously disclosed to the Defendant (Bates 022222 - 022652).  Further, Ms. Adams will testify about the methods and protocols employed by the FBI lab during the course of the analysis.  Ms. Adams' curriculum vitae that details her education, training, experience, specialized knowledge, publications, and recent testimony has previously been disclosed to the Defendant (Bates 022654 – 022656).

      Electronically approved on December 22, 2022.
      Lara Adams

**Fingerprint Examination**

Shannon Prince is a Physical Scientist/Forensic Examiner employed by the Federal Bureau of Investigation who authored a laboratory report dated March 25, 2020, which has previously been disclosed to the Defendant (Bates 23623-23644). The report described how Ms. Prince compared various items of evidence collected in the investigation of this case to the known fingerprints of the Defendant. Ms. Prince's report details the items she examined, the protocols she employed, the results she obtained, and the underlying raw data that support the conclusions. The United States intends to introduce all of the conclusions reflected in the report, most notably the results obtained from Items 77, 79, and 80. Ms. Prince will testify about the methods and protocols employed by the FBI lab during the course of the analysis. Ms. Prince's curriculum vitae that details her education, training, experience, specialized knowledge, and recent testimony has previously been disclosed to the Defendant (Bates 023646 – 023648). Ms. Prince has not authored any publications subject to disclosure under Rule 16.

<u>Electronically approved on December 21, 2022.</u>
Shannon Prince

**Soil Examination**

Ian Saginor is a Forensic Geologist Examiner employed by the Federal Bureau of Investigation. In July 2020, Mr. Saginor analyzed soil samples from bank of the Rio Grande River at the area where Jane Doe's body was deposited with various soil samples recovered by law enforcement during the investigation of this case. Mr. Saginor's report explains that comparison of geographically-derived materials for the purposes of determining the possibility of common origin is accomplished by using one or more analytical techniques, including color

designation, texture analysis, and composition determination. Mr. Saginor's report that details the items he compared, the results he obtained, the opinions he formed, and the basis for those opinions has been previously disclosed to the Defendant (Bates 023793-23821). In particular, Mr. Saginor will testify that soil recovered from the debris of the Defendant's pants (Item 21) cannot be differentiated from the soil near the Rio Grande River (Items 44, 45, and 46). Soil recovered from the debris of the Defendant's pants (Item 21) is different than the soil recovered from the Rio Grande River as represented by Items 47 and 48, the residence at 1046 Arch Lane as represented by Items 49 and 50, and the tire tracks on Waters Edge Ditch Road as represented in Item 51. Soil recovered from the Kia Sportage (Items 53 through 56) and the boots from the garage at 1046 Arch Lane (Items 69 and 70) is different than the soil recovered from near the Rio Grande River as represented by Items 44 through 48, the residence at 1046 Arch Lane as represented by Items 49 and 50, and the tire tracks on Waters Edge Ditch Road as represented by Item 51. Debris recovered from the boots of the Defendant (Items 25 and 26) contains insufficient geologic material for comparison to soil recovered from near the Rio Grande River as represented by Items 44 through 48, the residence at 1046 Arch Lane as represented by Items 49 and 50, and the tire tracks at Waters Edge Ditch Road as represented by Item 51. Further, Mr. Saginor will testify about the methods and protocols employed by the FBI lab during the course of the analysis. Mr. Saginor's curriculum vitae, which details his education, training, experience, specialized knowledge, publications, and recent testimony has previously been disclosed to the Defendant (Bates 023823 – 023826).

    <u>Electronically approved on December 23, 2022.</u>
    Ian Saginor

**Medical Opinions**

Dr. Shalon Nienow is a pediatrician and Medical Director of The Chadwick Center for Children and Families at Rady Children's Hospital in San Diego. Dr. Nienow specializes as a child abuse pediatrician, and, in that capacity, undertook a review of the Jane Doe's medical history and analyzed the nature and extent of the injuries observed and documented during the autopsy. Dr. Nienow's extensive review allowed her to reach conclusions regarding the nature and cause of the injuries, including that fact that, in the absence of a reasonable explanatory trauma history, the totality of the findings associated with Jane Doe is diagnostic of physical abuse. Further, Dr. Nienow concluded that failure to secure treatment for the type of injuries Jane Doe suffered is consistent with medical neglect and ultimately resulted in Jane Doe's death. Dr. Nienow's report, which documents the materials she reviewed and conclusions she drew, has previously been disclosed to the Defendant. (Bates 04272-04278). Dr. Nienow's curriculum vitae, which details her education, training, experience, specialized knowledge, and publications has previously been disclosed to the Defendant. (Bates 024279-24292). The list of cases in which Dr. Nienow has testified or been deposed as an expert over the last four years will be provided in discovery.

<u>Electronically approved on December 21, 2022.</u>
Dr. Shalon M. Nienow, MD, FAAP

**Cellular Analysis Survey Team**

Sean Macmanus is an agent with the Federal Bureau of Investigation and a member of the Cellular Analysis Survey Team. Russell Romero is an agent with the Federal Bureau of Investigation. In their respective capacities, Agents Macmanus and Romero analyzed the Google Location History records associated with the Defendant's email address, conducted the historical

cell site analysis on the Defendant's cellular telephone records, and analyzed/inspected that Defendant's cellular telephone. The reports associated with that analysis, which sets forth methodology they employed, the data they extracted, and conclusions they drew, have previously been disclosed to the Defendant. (Bates 18139-18173; 021162-021210; 021269-021322, 021765-021776; 024670-24707). In particular, Agents Macmanus and Romero will testify that on September 9, 2019, they transmitted a request to Google and Verizon for records pursuant to the emergency provision of the Stored Communications Act set forth in 18 U.S.C. § 2702(c)(4). That same day, Google and Verizon lawfully and voluntarily provided to FBI call detail records (i.e., the numbers of calls that were placed and received by the Defendant's phone), tower information (i.e., the locations of the cell towers off of which the phone pinged), and other location information based on GPS, WiFi, and cell tower signals. In terms of specifics, Google returned subscriber information and location data for one of the Defendant's Gmail accounts. Google's records covered the time frame from the evening of September 5 to roughly 3 a.m. on September 9. Verizon returned location data from the period covering September 6 through September 9, 2019. In total, the agents received approximately 1,326 location hits from the Google records, and other hits associated with Verizon.

After Jane Doe's body was found, the FBI sought and obtained numerous search warrants, two of which are pertinent to this notice. The first warrant, which was signed on September 12, 2019, by United States Magistrate Judge Laura Fashing, was for the Defendant's black Samsung phone and the second warrant, which was signed on October 17, 2019, by United States Magistrate Judge Steven Yarbrough, was directed at Google and sought "Geofence" data. Through these warrants, Agents Macmanus and Romero obtained roughly the same location and associated data

they had previously received via the emergency provisions of the Stored Communications Act. The differences in the data received from the Google warrant and combined exigency request was that the exigency request covered a slightly longer time frame. Specifically, the exigency data included about six additional hours of data that covered the period from the evening of September 5 into the early morning of September 6, and an additional several hours of data into the morning of September 9. Consequently, the agents received 256 fewer Google location hits from the warrant as compared to the exigency request.

Through these records, Agents Macmanus and Romero identified general geographic areas at which a device associated with the Defendant was present during the pertinent time periods. Agents Macmanus and Romero intend to testify that, in their expert opinions, the device associated with the Defendant was in the general areas demonstrated in their reports by either the cell phone tower providing service to the device, in the case of Verizon, or in the areas provided by Google based on GPS, Wifi, and/or cell tower signals received from the device on the dates and times specified in their reports.

The curriculum vitae for both Agent Romero and Macmanus, which details their respective education, training, experience, specialized knowledge, and previous testimony has previously been disclosed to the Defendant.

<u>Electronically approved on December 21, 2022.</u>
Agent Sean MacManus


<u>Electronically approved on December 21, 2022.</u>
Agent Russ Romero

**Footwear and Tire Analysis**

Brian McVicker is a forensic footwear and tire examiner with the Federal Bureau of Investigation. In that capacity, Mr. McVicker analyzed various items of evidence collected during the investigation of this matter and submitted to the FBI lab. Mr. McVicker's review permitted him to form various opinions and reach certain conclusions, all of which are documented in his report dated June 14, 2021, that has been previously disclosed to the Defendant (Bates 021801-021899). The report further describes the data Mr. McVicker relied upon, the methodology used, and the basis supporting each opinion described in the previously-disclosed report. Further, Mr. McVicker will testify about the methods and protocols employed by the FBI lab during the course of the analysis. Mr. McVicker's curriculum vitae, which details his education, training, experience, and specialized knowledge has previously been disclosed to the Defendant. (Bates 023748-023753).

Mr. McVicker's publications within the previous ten years are as follows:

R. A. Hicklin, B. C. McVicker, C. Parks, J. LeMay, N. Richetelli, M. M. Smith, J. Buscaglia, R. S. Perlman, E. M. Peters, B. A. Eckenrode, "Accuracy, Reproducibility, and Repeatability of Forensic Footwear Examiner Decisions." Forensic Sci. Int. 339 (Aug 2022) 111418. Available at: https://doi.org/10.1016/j.forsciint.2022.111418.

B. C. McVicker, J. F. McGurk and S. D. Shaw, "U.S. National Footwear Database System Feasibility Study," Dec 2021 [Online]. Available: https://www.jp.gov/pdffiles1/nij/grants/304048.pdf .

B. C. McVicker, C. L. Parks, J. LeMay, B. Eckenrode and R. A. Hicklin, "A Method for Characterizing Questioned Footwear Impression Quality," J. Forensic Identif. 71, 205–217 (Jul 2021). See Bates 3517-3525.

Mr. McVicker's testimony within the last four years are as follows:

New York v. James Krauseneck, Monroe County District Court, August 14, 2022;

Florida v. Ronnie Leon Hyde, Fourth Judicial Circuit (Jacksonville, FL, Virtual), March 31, 2022;

New York v. Lee Williams, County Court of Albany, March 4, 2022;

North Dakota v. Benjamin Robert Hannesson, Northeast Judicial District, Grand Forks, ND, February 7, 2022;

Texas v. Desmond Jones, District Court of Dallas County, Dallas, TX, February 26, 2020;

Wisconsin v. Dennis D. Daniels, Milwaukee County Circuit Court, (Milwaukee, WI), March 5, 2019;

United States v. Arapaho James Oldman, District Court of Wyoming, Cheyenne, WY, January 10, 2019;

<u>Electronically approved on January 5, 2023</u>
Brian McVicker

**<u>Trace Evidence</u>**

Ashley Baloga is a Physical Scientist / Forensic Examiner with the Federal Bureau of Investigation specializing in hair, fiber, fabric, and cordage evidence. In that capacity, Ms. Baloga examined various items of evidence collected during the investigation of this case and submitted to the FBI lab. Ms. Baloga's review permitted her to form various opinions and reach certain conclusions, all of which are documented in her reports dated May 18, 2021, and August 18, 2021, that have been previously disclosed to the Defendant (Bates 022215-022218; 023754-023775; 23776-23788). In particular, Ms. Baloga will testify that multiple head hairs and head hair portions that exhibit characteristics predominately of European ancestry recovered from items found on debris located on the Rio Grande riverbank are microscopically consistent with hairs from Jane Doe. Further, no hairs microscopically dissimilar to Jane Doe's hair were found on a shirt and

12

underwear submitted to the lab. Ms. Baloga will also testify that hairs recovered from a dress recovered from the rear driver's floorboard of a 1994 Ford F-250 exhibit characteristics predominately of European ancestry and are microscopically consistent with the hair of samples from Jane Doe. Further, Ms. Baloga will testify about the methods and protocols employed by the FBI lab during the course of the analysis. The aforementioned May 18, 2021 and August 18, 2021 reports detail the methodology Ms. Baloga employed and describes the bases for each opinion therein. Ms. Baloga's curriculum vitae, which details her education, training, experience, specialized knowledge, and previous testimony has previously been disclosed to the Defendant. (Bates 023790-023792).

<u>Electronically approved on December 28, 2022.</u>
Ashley Baloga

**Land Status**

The United States intends to call at trial representatives of the Pueblo of Santa Clara Government, Governor's Office, and Realty Office, including, but not limited to New Mexico Department of Transportation employee Shawn Chato (or designee), Realty Program Director Jesse Gutierrez (or designee), and Geographical Information Systems Technician Ivan Shije (or designee) to establish that 1046 Arch Lane, Espanola, New Mexico (GPS coordinates N 36°0'18.9841" W 106°2'33.0155) and Village Edge Road (GPS coordinates 35.965523, -106.078321) are located within the exterior boundaries of the Pueblo of Santa Clara and within the Santa Clara land grant located in Section 36, T.21 N., R 8 E., N.M.P.M. While the United States does not believe that such testimony falls under the Rule 702 umbrella, it nevertheless provides notice of intent to offer such testimony out of an abundance of caution. The land status report

has previously been disclosed to the Defendant (Bates 011816). Messrs. Gutierrez and Shije previously testified before The Honorable Judith Herrera in the matter of *United States v. Smith*, CR-18-3495.

The above-described expert testimony and evidence are offered to aid the jury in understanding the issues of the case. Each expert described above may also testify to certain hypothetical questions presented to them by counsel which are clearly permissible under Fed. R. Evid. 703. *See Atwood v. Union Pacific Railroad Company*, 933 F.2d 1019 (10th Cir. 1991) (*citing Teen Ed, Inc. v. Kimball Int'l*, 620 F.2d 399, 404 (3d Cir. 1980)). The above experts will be made available to defense counsel for questioning regarding what opinions or conclusions they may reach under the facts of this case.

The United States respectfully requests that the Court exercise its special gatekeeping obligation and determine that the proposed testimony of these witnesses is admissible, as they have a reliable basis in knowledge and experience in their respective disciplines. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221-22 (10th Cir. 2003), *cert. denied*, 540 U.S. 1003, 124 S. Ct. 533 (2003).

The Court has broad discretion to determine the means for assessing an expert's reliability and in making the ultimate determination of reliability. *Dodge v. Cotter Corp.*, 328 F.3d at 1222. As the proposed testimony is standard trial testimony on medical diagnosis, cause of death, retrograde extrapolation, cause of collision and toxicology, the United States respectfully requests that the Court treat this Notice as a proffer on the training and background of these witnesses and issue an order recognizing the witnesses as experts and permitting the introduction of their testimony. Specifically, the United States asks that the Court make a finding, upon hearing

testimony, that the testimony of these witnesses has a reliable basis in the knowledge and experience of their relevant disciplines. *See Id. (quoting Kumho Tire*, 526 U.S. at 149). The United States requests that the Court reserve its reliability determination until the United States introduces into evidence the experience and training of the witnesses at trial.

WHEREFORE, the United States respectfully requests that this Court find that the proposed testimony of each expert has a "reliable basis in the knowledge and experience" of the respective fields of each expert.

                    Respectfully submitted,

                    ALEX M.M. UBALLEZ
                    United States Attorney
                    ***Electronically filed on 1/16/23***
                    Jack E. Burkhead
                    Assistant United States Attorney
                    P.O. Box 607
                    Albuquerque, New Mexico 87103
                    (505) 346-7274

I hereby certify that on 1/16/2023, I filed
the foregoing electronically through the CM/ECF
System, which caused counsel for the defendant
to be served by electronic means, as more fully
reflected on the Notice of Electronic Filing.

*/s/*
Jack E. Burkhead
Assistant United States Attorney