IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 1:19-cr-3333-WJ

MALCOLM TORRES,

    Defendant,

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT 2; GRANTING DEFENDANT'S MOTION TO STRIKE ENHANCEMENT IN COUNT 3; AND DENYING DEFENDANT'S MOTION TO STRIKE ENHANCEMENT IN COUNT 2 AS MOOT

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Count 2 (Doc. 101), and Defendant's Motion to Strike the Sentencing Enhancement under 18 U.S.C. § 3559(f) in Counts 2 and 3 of the Indictment (Doc. 98). Having considered the written and oral arguments of counsel, the Court concludes Count 2 must be dismissed because the Assimilative Crimes Act prohibits the Government from charging Defendant with second-degree felony murder by reference to New Mexico's abuse of a child statute. Defendant's Motion to Dismiss Count 2 (Doc. 101) is **GRANTED**. Because the Court dismisses Count 2, Defendant's Motion to Strike the Sentencing Enhancement in Count 2 (Doc. 98) is **DENIED in part** as moot. As to Defendant's request to strike the sentencing enhancement in Count 3, the Government in its briefing and at the February 6, 2023, hearing conceded Count 3's charge of assault resulting in great bodily injury is no longer a crime of violence after *Borden v. United States*, 141 S. Ct. 1817 (2021). Accordingly, Defendant's Motion to Strike (Doc. 98) is **GRANTED in part** as to Count 3 and the sentencing enhancement contained therein is **STRUCK**.

1

## DISCUSSION

**I.        Defendant's Motion to Dismiss Count 2**

**A.       The Assimilative Crimes Act**

The Assimilative Crimes Act ("ACA") makes applicable on federal enclaves certain criminal laws of the state in which the enclave is located. The ACA reads:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated . . . shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Indian Country qualifies as a federal enclave for ACA purposes. *United States v. Pino*, 606 F.2d 908, 915 (10th Cir. 1979); *Williams v. United States*, 327 U.S. 711 (1946).

The ACA was enacted in the 1820s when "federal statutory law punished only a few crimes committed on federal enclaves, such as murder and manslaughter." *Lewis v. United States*, 523 U.S. 155, 160 (1998). Congress enacted the ACA to allow defendants to be federally prosecuted for state offenses committed on federal enclaves when federal statutes did not outlaw such offenses. *Id.* at 161. "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Id.* at 160. In accordance with the language of the ACA and its gap-filling purpose, the United States Supreme Court has articulated a two-step test to determine when state law can be assimilated in a federal enclave.

First, the Court must ask, "Is the defendant's 'act or omission . . . made punishable by *any* enactment of Congress.'" *Id.* at 164 (citing 18 U.S.C. § 13(a)). To make this determination, the Court considers whether the federal statute "seek[s] to punish approximately the same wrongful behavior" as the state statute. *Id.* at 165. If the answer is "no," the ACA presumptively assimilates the state law, and the Government would be permitted to bring state charges. *Id.* at 164. However,

if the answer is "yes," the Court "must ask the further question whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question." *Id.* The Supreme Court has identified three circumstances when a federal statute may preclude application of state law: (1) the state statute's "application would interfere with the achievement of a federal policy," (2) "the state law would effectively rewrite an offense definition that Congress carefully considered," or (3) "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.* at 164-65.

The ACA "will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior." *Id.* at 165. If an offense has been defined and prohibited by federal law, the federal offense cannot "be redefined and enlarged" by the ACA. *Williams*, 327 U.S. at 717. Moreover, "[t]he fact that the definition of [an] offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State definition." *Id.* at 717-18. Nor can "a conflicting state definition . . . give a narrower scope to the offense than that given to it by Congress." *Id.* at 718. That said, "a substantial difference in the kind of wrongful behavior covered . . . will ordinarily indicate a gap for a state statute to fill." *Lewis*, 523 U.S. at 165. To make this determination, the Court considers the offenses in question "in a generic sense" to determine whether a federal statute prohibits acts of the same "general type or kind" as the state statute at issue. *Williams*, 327 U.S. at 722.

**B.**     **Federal Statute at Issue: 18 U.S.C. § 1111(a)**

The Defendant is charged under the federal murder statute—18 U.S.C. § 1111(a)—in both Counts 1 and 2 of the superseding indictment. In Count 1, he is charged with first-degree felony murder predicated on the enumerated federal offense "child abuse." In Count 2, he is charged with

second-degree felony murder predicated on New Mexico's offense "abuse of a child." NMSA 1978, § 30-6-1(D)(2) (2009).

The federal murder statute defines murder as follows:

**Murder is the unlawful killing of a human being with malice aforethought**. **Every murder** perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or **committed in the perpetration of, or attempt to perpetrate**, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, **child abuse**, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, **is murder in the first degree**.

**Any other murder is murder in the second degree.**

18 U.S.C. § 1111(a) (relevant parts bolded and underlined). Section 1111(a) provides for three types of murder: first-degree murder; first-degree felony murder based on certain enumerated crimes; and second-degree murder.

"Second degree murder is the catch-all murder offense." *United States v. Serawop*, 410 F.3d 656, 663 (10th Cir. 2005). The Tenth Circuit has defined second-degree murder as "any other unlawful killing of a human being with malice aforethought." *United States v. Pearson*, 159 F.3d 480, 486 (10th Cir. 1998). Section 1111(a) says nothing about second-degree *felony* murder; however, the Tenth Circuit appears to have suggested that such a crime exists by permitting malice aforethought to be satisfied for second-degree murder by the "commission of a felony when the felony in question is not one of those specified in the first-degree murder paragraph of § 1111(a)." *Id.* The Government cites *Pearson* as the legal basis for its second-degree felony murder charge.[1]

---

[1] At the February 6, 2023, hearing, the Defendant made clear that he does not concede that second-degree felony murder is an appropriate charge given that the Tenth Circuit has never directly held that second-degree felony murder is a crime under 18 U.S.C. § 1111(a). However,

4

C.     **Federal "Child Abuse" Compared to New Mexico's "Abuse of a Child"**

In Count 1, Defendant is charged with first-degree felony murder predicated on federal "child abuse." Section 1111(c)(3) defines "child abuse" as "intentionally or knowingly causing death or serious bodily injury to a child." In Count 2, the Defendant is charged with second-degree felony murder predicated on the New Mexico felony "abuse of a child." New Mexico's Abandonment or Abuse of a Child statute defines "abuse of a child" in pertinent part as: "a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . tortured, cruelly confined or cruelly punished." § 30-6-1(D)(2). At first glance, the state and federal child abuse statutes appear distinguishable, and a gap seems to exist for state law to fill. However, the Supreme Court has rejected such a narrow reading of the ACA.

The Supreme Court case *Lewis v. United States*, 523 U.S. 155 (1998), is instructive on this point. In *Lewis*, the Supreme Court was called upon to address whether under the ACA the Government could charge the defendant with violating Louisiana's first-degree murder statute. *Id.* at 158. The Supreme Court held the Government could not because the federal murder statute provided "complete coverage . . . over all types of federal enclave murder" and there was "no gap for Louisiana's statute to fill." *Id.* at 169. In coming to this conclusion, the Supreme Court rejected the Government's argument that the ACA should "assimilate a state law so long as that state law defines a crime in terms of at least one element that does not appear in the relevant federal enactment." *Id.* at 162-63. The Court found this interpretation of the ACA to be "too narrow," reasoning that the "Government's broad view of assimilation threatens not only to fill nonexistent gaps, but also to rewrite each federal enclave-related criminal law in 50 different ways, depending

---

the Defendant does not directly challenge the legitimacy of the charge in his motion; therefore, the Court need not address whether *Pearson* in fact supports such a charge.

upon special, perhaps idiosyncratic, drafting circumstances in the different States." *Id.* at 163. Instead, to determine whether an "act or omission" is "made punishable by any enactment of Congress," the Supreme Court instructed courts to assess the two crimes to see if the state and federal statutes "seek to punish approximately the same wrongful behavior." *Id.* at 165.

**D.      The ACA Bars the Government from Charging Defendant with Second-Degree Felony Murder Predicated on the New Mexico Felony of "Abuse of a Child."**

Defendant Torres moves to dismiss Count 2 of the superseding indictment on the basis that, applying the two-step test laid out in *Lewis*, the ACA prohibits the Government from charging second-degree felony murder predicated on the New Mexico felony of abuse of a child. The Government does not argue the merits of the *Lewis* test. Instead, the Government makes two procedural arguments against dismissal: (1) Count 2 is not charged under the ACA but rather based on the theory of second-degree felony murder allowed by *Pearson*; and (2) the issue of whether the ACA precludes charges is not ripe until sentencing. Neither argument is availing.

The Government's first argument erroneously assumes the ACA only comes into play when the Government charges a defendant under the ACA. In Count 2, Defendant is alleged to have committed the unlawful killing of Jane Doe in Indian Country. The Tenth Circuit has explicitly held that Indian Country qualifies as a federal enclave under the ACA. *Pino*, 606 F.2d at 915. Therefore, the ACA applies in this case. Since the ACA applies, the Supreme Court's decisions in *Lewis* is controlling and, as discussed, requires the dismissal of Count 2. Moreover, nothing in *Pearson* suggests that second-degree felony murder charges fall outside the purview of the ACA. Contrary to the Government's contentions, the ACA need not be specifically invoked in the indictment for its restrictions to apply. For the Court to hold otherwise would allow the Government to evade the ACA by simply omitting reference to the Act in the indictment.

6

The Government next contends the ACA issue is not ripe until sentencing. This argument is puzzling considering the Government acknowledges the ACA "addresses both charges that may be brought before a jury and also punishments." **Doc. 107 at 10**. Regardless, the Government appears to assert that because ACA issues *can* arise during sentencing, ACA issues are not ripe until sentencing. This argument is soundly contradicted by the Tenth Circuit precedent upon which the Government relies. The Government cites *United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013), to support its position. However, in *Christie* the Tenth Circuit explicitly stated that a pretrial challenge, like defendant's, could be proper:

> Sometimes questions about the propriety of an assimilated charge will arise and can be resolved early in a criminal case. If, for example, it's clear that a federal statute applies to the defendant's conduct and that the assimilation of a state law applying to that same conduct would . . . enter a field Congress has expressed an "intent to occupy," then the need for dismissing an assimilated crime may be evident even before trial.

*Id.* at 1170-71 (citation omitted). Moreover, as the Defendant points out, under Federal Rule of Criminal Procedure 12(b)(3)(B), he is required to object to the sufficiency of the indictment before trial. Thus, the Defendant properly raised this challenge, and the issue is ripe.

Since the ACA applies and the issue is ripe, the Court is required to proceed to the merits and to analyze whether the ACA permits state charges to be brought based on Defendant's conduct on a federal enclave. For this analysis, the Court applies the two-part test adopted by the Supreme Court in *Lewis*. First, the Court asks, "Is the defendant's 'act or omission . . . made punishable by *any* enactment of Congress.'" *Lewis*, 523 U.S. at 164 (citation omitted). To make this determination, the Court considers the federal statute in a "generic sense" to determine whether the Defendant's acts are "of a general type or kind" that Congress intended to prohibit. *Williams*, 327 U.S. at 722. Said another way, the Court considers whether the federal statute "seek[s] to punish approximately the same wrongful behavior" as the state statute. *Lewis*, 523 U.S. at 165. If

7

the answer is "no," the ACA is presumed to assimilate the state law, and the Government would be permitted to bring the state charges. *Id.* at 164. However, if the answer is "yes," the Court "must ask the further question whether the federal statute[] that appl[ies] to the 'act or omission' preclude[s] application of the state law in question." *Id.*

As to the first question, the answer here is "yes": Defendant Torres's alleged act of unlawfully killing Jane Doe while engaged in committing child abuse is made punishable by an enactment of Congress. Specifically, the federal murder statute defines and criminalizes the act of "unlawful killing of a human being . . . committed in the perpetration of . . . child abuse" as first-degree felony murder. § 1111(a). The Government is aware of this crime because it charged the Defendant with it in Count 1. Viewing the federal murder statute generally, it is clear the federal statute "seek[s] to punish approximately the same wrongful behavior" as the charge of second-degree felony murder predicated on the state felony of abuse of a child. *Lewis*, 523 U.S. at 165.

Because the answer to the first question is "yes," the Court must proceed to the second inquiry: whether the federal murder statute precludes application of the New Mexico abuse of a child statute in question. The Government contends it is unclear whether the federal murder statute provides complete coverage in this case. For this argument, the Government relies on the majority opinion in *United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013). In *Christie* the defendant was convicted of federal second-degree murder and two state homicide offenses assimilated from New Mexico law. *Id.* at 1174. On appeal, the defendant argued the district court erred by failing to dismiss the assimilated state charges before trial. *Id.* The majority—authored by then Circuit Judge Gorsuch—avoided answering this specific question, concluding that even assuming without holding that the district court erred, any error was harmless because the district court dismissed the state homicide charges after trial and overwhelming trial evidence supported the remaining

charges. *Id.* at 1175-76. Despite declining to address the ACA issue, the majority went on to discuss that it is "far from clear" that the two state charges would be precluded by the ACA. *Id.* at 1174. Because the majority explicitly stated it was not deciding the ACA issue, *see id.* at 1175, the majority's discussions about the ACA are no more than dicta. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) ("Dicta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.'") (citation omitted). At most, the majority's ACA discussion stands for the proposition that "[s]ome day this court may have to resolve these tricky questions." *Id.* at 1175. As the Defendant points out, the *Christie* concurrence is far more helpful to this Court's analysis. Circuit Judge Briscoe concurred with the majority's conclusion that the error was ultimately harmless; however, before doing so, the concurrence held, rather than assumed, that the district court had erred by failing to dismiss the state claims in violation of the ACA. "As the Court explained in *Lewis*," Judge Briscoe in her concurrence reasoned, "the nature of the federal murder laws shows that Congress intended its first-and-second degree murder statute to cover the unlawful killing of a human being with malice aforethought." *Id.* at 1177. Thus, "the federal murder and involuntary manslaughter statutes preclude the assimilation of the [New Mexico] child-abuse-resulting-in-death statute in this case." *Id.* The majority itself foreshadowed the importance of the concurrence: "We have no doubt that when [this court] does [resolve these tricky questions], the court and litigants alike will be aided by the concurrence's thoughtful discussion." *Id.* at 1175. This Court is now faced with an issue like that raised in *Christie*, and as majority anticipated, the Court finds the concurrence instructive and, like the concurrence, the Court finds *Lewis* to be dispositive.

9

In *Lewis*, the Supreme Court explained that federal statutes may preclude application of state law under the ACA when "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.* at 164. At issue in *Lewis* was whether Congress intended the federal murder statute to preclude the assimilation of Louisiana's first-degree murder statute on a federal enclave. The Court concluded that the federal murder statute provided "complete coverage . . . over all types of federal enclave murder"; thus, there was "no gap for the Louisiana statute to fill." *Id.* at 169. This is the exact question raised in the case at bar. Thus, the Court's conclusion in *Lewis* is directly applicable. In *Lewis*, the Supreme Court made clear that Congress intended the federal murder statute to cover the entire field of federal enclave murder. Accordingly, the Government may not evade the ACA to get two bites at the apple by charging first-degree felony murder predicated on the enumerated federal crime of "child abuse" and second-degree felony murder predicated on a state-law analogue of that same crime. Like in *Lewis*, there are no gaps for New Mexico law to fill in this case. Thus, the ACA prohibits the charging of second-degree felony murder predicated on New Mexico's abuse of a child statute. Defendant's Motion to Dismiss Count 2 is **GRANTED**. Count 2 is dismissed without prejudice.[2]

## II.     Defendant's Motion to Strike Sentencing Enhancement in Counts 2 and 3

Defendant moves to strike the 18 U.S.C. § 3559(f) sentencing enhancement included in Counts 2 and 3 of the indictment on the grounds that neither second-degree murder (Count 2) nor assault resulting in serious bodily injury (Count 3) are "crime[s] of violence." At the hearing on February 6, 2023, the Government conceded that after the Supreme Court's decision in *Borden v.*

---

[2] Because the Court dismisses Count 2 on these grounds, the Court need not address Defendant's alternative contention that Count 2 must be dismissed because the Government cannot use a state statute to prove malice aforethought when the *mens rea* requirement for the state statute is lower than that required for second-degree murder.

10

*United States*, 141 S. Ct. 1817 (2021), and the Tenth Circuit's decision in *United States v. Benally*, 19 F.4th 1250 (10th Cir. 2021), assault resulting in serious bodily injury—which can be committed with a *mens rea* of recklessness—no longer qualifies as a "crime of violence" under 18 U.S.C. § 16(a). Accordingly, the Court **GRANTS** Defendant's motion to strike the sentencing enhancement in Count 3. Because the Court dismisses Count 2 on ACA grounds, the Court **DENIES** Defendant's Motion to Strike the enhancement in Count 2 as moot and without prejudice.

## CONCLUSION

Defendant's Motion to Dismiss Count 2 (Doc. 101) is **GRANTED**. Count 2 is **DISMISSED** without prejudice. Because the Court dismisses Count 2, Defendant's Motion to Strike the sentencing enhancement in Count 2 is **DENIED in part** (Doc. 98) as moot and without prejudice. Finally, the Government concedes the sentencing enhancement in Count 3 should be struck because assault resulting in great bodily injury is no longer a crime of violence after *Borden v. United States*, 141 S. Ct. 1817 (2021). Accordingly, Defendant's Motion to Strike (Doc. 98) is **GRANTED in part** as to Count 3 and the sentencing enhancement contained therein is **STRUCK**.

IT IS SO ORDERED.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE