IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                                                               No. 1:19-cr-3333-WJ

MALCOLM TORRES,

    Defendant,

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S FIRST MOTION TO SUPPRESS

**THIS MATTER** is before the Court on Defendant Malcolm Torres' First Motion to Suppress (**Doc. 102**). The Court held a hearing on Defendant's Motion on February 27, which was continued to March 8, 2023. Defendant's first motion seeks to suppress evidence of Defendant's Google GPS data and Verizon cell-site location information ("CSLI") obtained without a warrant by the FBI on September 9, 2019, through requests made under the Stored Communications Act, 18 U.S.C. § 2702. Defendant contends suppression is warranted because the requests were unreasonable searches under the Fourth Amendment. Having considered the written and oral arguments of counsel as well as the evidence presented at the two hearings, the Court **DENIES** Defendant's First Motion to Suppress (**Doc. 102**) because even assuming the FBI's data requests were searches, exigent circumstances justified the requests.

### BACKGROUND

On September 9, 2019, FBI Special Agent Sean MacManus made emergency requests to Google and Verizon pursuant to the Stored Communications Act. Agent MacManus requested, among other data, Defendant's historic GPS and cell-site location data from September 6 to September 9, 2019—roughly a three-day period. Defendant attached the requests to his First Motion to Suppress.

1

*See* **Doc. 102, Ex. A, B.** The FBI sought information from Google for six phone numbers and two Gmail accounts believed to be associated with Defendant and sought information from Verizon on three cell phone numbers. Google's Emergency Disclosure Request form asked the Government to provide a detailed explanation of the emergency, including information about how the threat involved the risk of death or serious physical injury to a person and when the harm might occur. Agent MacManus provided the following information to Google:

> On September 8, 2019, the FBI was notified that a 5-year-old girl had been kidnapped by her father in Espanola, New Mexico. The father made statements to an associate which indicated he may have harmed or killed the 5-year-old or left her in a remote area. The father is in custody, but the 5-year-old has not been located. The 5-year-old was last seen around 4:00pm (MDT) on September 6, 2019. Due to the threat of serious injury or death to the child, the FBI is seeking an emergency disclosure of records.

**Doc. 102, Ex. A at 1.** The Google form also asked the Government to explain why the normal disclosure process was insufficient to address the emergency it described. Agent MacManus wrote, "Due to the imminent danger of death or injury to a child, there is insufficient time to seek regular legal process and await results." *Id.* **at 6.** The Verizon form is much briefer. Agent MacManus testified at the March 8 hearing that Verizon requires the FBI to call and explain the factual basis for the emergency request and then submit the form. Agent MacManus testified that he told Verizon essentially the same facts that appear in the Google request—there is no transcript of Agent MacManus's phone call to Verizon. The Verizon form asks, "Does this request potentially involve the danger of death or serious injury to a person, necessitating the immediate release of information relating to that emergency." **Doc. 102, Ex. B.** And the form provides two boxes the FBI can check: "YES" or "NO." *Id.* In this case, Agent MacManus checked "YES." The same day the requests were made both companies released location data related to Defendant to the FBI.

2

**DISCUSSION**

Defendant urges the suppression of all "Google cell phone location data and Verizon cell site location information obtained without a warrant by the FBI on September 9, 2019." **Doc. 102 at 1**. Defendant contends his location data should be suppressed because the FBI obtained this evidence via an unreasonable search. The Court is not persuaded.

For purposes of legal analysis of Defendant's First Motion to Suppress, the Court will assume, without making a finding or holding, that the data requests made by the FBI qualify as Fourth Amendment searches. Based on this assumption, the Court finds that exigent circumstances existed that provided legal justification for the FBI's data requests made to Google and Verizon.

When the FBI requested information from Google and Verizon, five year old child victim Jane Doe was missing—and had been missing for over 24 hours. The FBI did not know where Jane Doe was or whether she was still alive; however, the FBI did know that Jane Doe had last been seen in the care of Defendant and that he had made conflicting and suspicious statements about Jane Doe's whereabouts. Law enforcement officers had also spoken to Shane Binion, a friend of Defendant's, who had told them Defendant was drunk and could have hurt Jane Doe. This plainly created exigent circumstances justifying the requests for roughly three days of Defendant's historic location data.

**A.  The Stored Communications Act**

The Stored Communications Act ("SCA") deals with voluntary and compelled disclosure of stored wire and electronic communications and associated records held by third parties such as Google and Verizon. Generally, the SCA prohibits providers from knowingly divulging customer communications or records to governmental entities. 18 U.S.C. § 2702(a). However, the SCA provides two means for the Government to seek records or customer communications: (1) the Government may compel records from service providers under 18 U.S.C. § 2703, or (2) in emergency situations, the

Government may request providers voluntarily disclose records and customer communications under 18 U.S.C. § 2702. To obtain Defendant's location data in this case, the FBI made emergency requests under § 2702.

Under § 2702(c)(4) of the SCA, a provider "may divulge a record or other information pertaining to a subscriber to or customer of such service . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." *See also* § 2702(b)(8) (voluntary disclosure of communications). Defendant does not dispute that cell-site location information and GPS data qualifies as "other information" under the SCA, and the Court sees no reason to hold otherwise. *See United States v. Gilliam*, 842 F.3d 801, 803 (2d Cir. 2016) (holding "other information" includes location of subscriber's cell phone).

### B. Fourth Amendment Searches

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches are per se unreasonable under the Fourth Amendment. *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020). Defendant bears the initial burden of showing that a search implicates the Fourth Amendment. *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020). If this burden is met, then the Government bears the burden of proving the warrantless search was justified by an exception. *Id.* If the Government establishes an exception to the warrant requirement, the search is constitutional. *Neugin*, 958 F.3d at 930.

Exigent circumstances is a recognized exception to the Fourth Amendment's warrant requirement. "The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Doe v. Woodard*, 912 F.3d 1278, 1290 n.14 (10th

Cir. 2019) (citation omitted). The test for exigent circumstances is two-fold: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006). "In such an emergency, officers do not need probable cause." *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010).

**I.    Assuming a Search Took Place, Exigent Circumstances Justified the Search.**

The parties presented extensive argument on the issue of whether the FBI's emergency requests under the SCA were searches protected by the Fourth Amendment. This case falls in the grey area left by the Supreme Court's decision *Carpenter v. United States*, 138 S.Ct. 2206 (2018), and the parties have identified no case on point from any circuit. However, the Court need not wade into uncharted territory and pass on this question because even assuming the FBI's emergency SCA requests qualified as searches, Defendant's location data need not be suppressed because exigent circumstances justified the requests.

**A.    FBI Agents Had an Objectively Reasonable Basis to Believe There Was an Immediate Need to Protect the Life and Safety of Jane Doe.**

To determine if exigent circumstances justify a warrantless search, the Court first analyzes whether the officers had an "objectively reasonable" belief that there was "an immediate need to protect the lives or safety of themselves or others." *Najar*, 451 F.3d at 718. Whether the officer's belief was objectively reasonable depends on "the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *McInerney v. King*, 791 F.3d 1224, 1232 (10th Cir. 2015) (citation omitted). An officer's reasonable belief "does not require absolute certainty; the standard is more lenient than the probable cause standard." *Id.*

Defendant contends no exigency existed because the FBI made its emergency requests after Defendant had been arrested and when he "was physically incapable of taking any action that required

5

real time immediate intervention by the police." **Doc. 102 at 13.** According to Defendant, "In every single federal case involving the emergency provision of the SCA the officer believed that immediate action was necessary to prevent harm *caused* by the defendant." *Id.* (original emphasis). The cases cited by Defendant involve emergency SCA requests for real-time CSLI or GPS data on defendants who officers reasonably believed posed an imminent danger and who officers sought to locate to neutralize. *See e.g.*, *United States v. Gilliam*, 842 F.3d 801 (2d Cir. 2016); *United States v. McHenry*, 849 F.3d 699 (8th Cir. 2017); *United States v. Takai*, 943 F. Supp. 2d 1315 (D. Utah 2013); *United States v. Caraballo*, 831 F.3d 95 (2d Cir. 2016). But nothing in these cases suggests the emergency provision of the SCA *can only* be invoked when a defendant is at large and needs to be found to prevent injury or death. Rather, those cases are factually distinguishable from the case at bar because they involved a very different type of emergency and the requests were for real-time CLSI and GPS data rather than historic data. In the cases relied on by Defendant, officers made the emergency requests to find the defendant in question before he could harm others. Here, in contrast, agents requested roughly three days of Defendant's historic data to find a child victim who had last been seen in Defendant's care. Moreover, at the time agents requested Defendant's historic data, they did not know whether the child was alive or dead.

      Neither party has directed the Court to any cases dealing with this unique factual scenario. However, the Court finds the Supreme Court's discussion of exigent circumstances in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), provides some important guidance. In *Carpenter*, the government had compelled MetroPCS and Sprint to produce historic CSLI data on the defendant spanning 127 days by invoking § 2703 of the Stored Communications Act. *Id.* at 2212. The issue

before the Supreme Court was whether this constituted a Fourth Amendment search.[1] *Id.* at 2211. The Supreme Court held that it did. *Id.* at 2219. Although the Supreme Court held that "the Government will generally need a warrant to access CSLI," it went on to explain, "case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances." *Id.* at 2222. For example, "if law enforcement is confronted with an urgent situation, such fact-specific threats will likely justify the warrantless collection of CSLI." *Id.* at 2223. The Supreme Court suggested these exigent circumstances could include the need to "protect individuals who are threatened with imminent harm," and the Court noted that lower courts had approved warrantless searches related to "child abductions." *Id.* Thus *Carpenter* "does not call into doubt warrantless access to CSLI in [exigent] circumstances" nor does it limit the ability of police "to respond to an ongoing emergency." *Id.* This discussion in *Carpenter* supports this Court's conclusion that exigent circumstances justified the emergency SCA requests for roughly three days of Defendant's historic CSLI and GPS data.

At the March 8 suppression hearing, FBI Special Agent Michelle Cobb testified that Jane Doe's mother, V.M., contacted local law enforcement on the evening of September 8, 2019, because her daughter had been missing for at least nine hours. In response to questioning, Agent Cobb testified that at the time she and other FBI agents got involved in the search for and the investigation relating to the missing five-year-old child, this was an "all-hands-on-deck" situation. The Court agrees with Agent Cobb's assessment of the situation confronting law enforcement. Both local law enforcement and the FBI responded to V.M.'s call. When law enforcement arrived at Defendant's residence, where Jane Doe had last been seen in his care, Defendant was not there. Defendant was found later that

---

[1] As explained earlier, the Court need not pass on whether the data requests here were searches; nevertheless, the Supreme Court's discussion of exigent circumstances in *Carpenter* remains helpful.

7

evening at a Dairy Queen and arrested on unrelated state-court warrants for alleged state probation violations.

According to Agent Cobb, Defendant told law enforcement he had last seen Jane Doe at 9:00 or 9:30 a.m. on the morning of Sunday, September 8 when she walked out the front door smiling. Defendant claimed he went outside and looked for her for a short time but then went back inside and resumed watching television with his son. Defendant also told law enforcement he had made lunch for Jane Doe, but he had not seen her since that morning. Agent Cobb testified that Defendant's nine-hour delay in reporting the missing girl struck the FBI and local law enforcement as suspicious. Agent Cobb also testified Defendant had told law enforcement they were wasting their time by searching Defendant's house and that Jane Doe was not where they were looking.

According to Agent Cobb, on the night of September 8, 2023, local law enforcement alongside the FBI began searching the immediate area surrounding Defendant's house, where Jane Doe had last been seen. Law enforcement also conducted a neighborhood canvass, enlisted community member volunteers, and employed trained dogs in the search for Jane Doe.

Agent Cobb testified that she spoke with Aubrey Montoya at 5:00 a.m. on the morning of September 9, 2023, and that Ms. Montoya told her she had seen Jane Doe and her little brother playing while at Defendant's residence on Saturday, September 7 between 3:30 and 5:00 p.m. At the time the FBI spoke with Ms. Montoya, the FBI believed she was the last person—aside from Defendant—to have seen Jane Doe. According to Agent Cobb, law enforcement officers also interviewed another friend of Defendant's, Mr. Shane Binion, on the evening of September 8 and then again at 3:00 a.m. on September 9, 2023. Mr. Binion informed law enforcement that on the evening of Saturday, September 7, he had received a message from Defendant asking for help. Mr. Binion told officers he did not see this message until the following day, but that on Sunday, September 8, he went over to

Defendant's house around 11:00 a.m. to find Defendant heavily intoxicated. Mr. Binion also told officers Defendant was making comments that Jane Doe was gone, comments about "Santa Clara" and about "the river." According to Agent Cobb, Mr. Binion told law enforcement that when he was at Defendant's house Jane Doe's little brother was asking for her and needed a diaper change. Mr. Binion also relayed his opinion that Defendant was a drunk, that Defendant could become violent when he was drunk, and that Defendant was capable of hurting Jane Doe. According to Mr. Binion, Jane Doe was not Defendant's biological daughter and Defendant did not want to care for her and felt she was not his responsibility. Law enforcement also spoke with Jane Doe's mother, V.M., who described instances of domestic violence between V.M. and Defendant. But according to V.M., Defendant had never laid hands on Jane Doe. Agent Cobb testified that each of these conversations took place before the FBI made the emergency requests for Defendant's data.

Agent Cobb's testimony substantiates the Government's argument that when the FBI requested the data, a five-year-old child had been missing for over 24 hours and the FBI "had no idea if [Jane Doe] was alive or dead, they had no clue whether she was being held captive, they had no inkling of what peril she might be in." **Doc. 109 at 15**. Agent Cobb's testimony also supports the Government's contention that at the time of the emergency requests, the FBI knew the "person entrusted with her care and the last person who had seen her alive – the Defendant – was providing police, family, and friends conflicting statements about when he last saw her." *Id.* **at 14.** These circumstances created an exigency requiring immediate action to ensure Jane Doe's safety.

FBI Special Agent Sean MacManus testified at the March 8, 2023 hearing that when the FBI seeks a traditional search warrant for GPS and CSLI data, it typically takes at least a few days if not two to four weeks for the FBI to receive the data. This contrasts with Agent MacManus's testimony that emergency requests under the SCA often results in same-day service because the companies try

9

to get the data to the FBI as soon as possible. Agent MacManus's testimony makes clear that the nature of the emergency—a five-year-old girl missing for over 24 hours—left FBI agents "insufficient time to seek a warrant." *Woodard*, 912 F.3d at 1291 n.14.

The Court agrees with the Government that the FBI had an objectively reasonable basis to believe there was an immediate need to protect the life and safety of Jane Doe when they requested roughly three days of Defendant's historic location data from Google and Verizon. Jane Doe, a five-year-old child, had been missing for over 24 hours and the last person she had been seen with, Defendant, was providing family, friends, and law enforcement with conflicting and concerning information about her whereabouts. Under the circumstances, the FBI had a reasonable belief that "the chances of finding her alive diminished with each second that ticked off the clock." **Doc. 109 at 15.** The first prong of the exigency test is satisfied.

### B. The Scope of the Search Was Reasonable.

"While the first [exigency] factor considers whether there is a reasonable basis to believe an emergency exists, the second factor necessarily deals with the manner and scope of the search." *Najar*, 451 F.3d at 720. Even when exigent circumstances exist, "the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1172 (10th Cir. 2003) (citation omitted).

Defendant contends the scope of the search was unreasonable because the FBI requested a vast amount of information on him. Defendant takes issue with the scope of the Government's requests because the Government asked for Google data from six different phone numbers and two email addresses and requested CSLI and phone call and text message records from Verizon from three phone numbers. Because of the expansive nature of the data request, Defendant likens it to "an officer asking

a judge to allow him to enter a person's home and search everywhere and for anything." **Doc. 102 at 15.**[2]

Defendant is correct that the requests of Google and Verizon were broad and that the law requires the scope of a warrantless search to be "strictly circumscribed by the exigencies which justified its initiation." *United States v. McCullough*, 457 F.3d 1150, 1163 (10th Cir. 2006) (citation omitted). However, the exigency in this case—a five-year-old girl gone missing for over 24 hours—justified a three-day request of Defendant's historic CSLI and GPS data. In other words, the requests were not disproportionate to the exigency. As the Government puts it, the requests were "tailored to answering one question: *where is Jane Doe*?" **Doc. 109 at 17.**

The Government requested GPS and CSLI data on Defendant from September 6 through September 9. These dates "were purposefully chosen in that they bracketed the timeframe in which the FBI believed that Jane Doe was last seen alive by anyone but the Defendant and the date of the request." *Id.* **at 16.** Agent Cobb testified that Defendant was arrested on the evening of Sunday, September 8, 2023, on three outstanding state probation warrants. Agent Cobb also testified Jane Doe was still missing on September 9 when the FBI made the emergency requests to Verizon and Google.

The FBI reasonably believed that obtaining roughly three days of Defendant's CSLI and GPS data would help them find Jane Doe because she had last been seen in Defendant's care and he had made suspicious and contradictory statements to friends, family, and law enforcement about her

---

[2] Defendant also argues the requests are troubling because the Google request stated that "On September 8, 2019, the FBI was notified that a 5-year-old girl had been kidnapped by her father in Espanola, New Mexico" and that "[t]he father is in custody, but the 5 year old has not been located." **Doc. 102, Ex. A at 1.** According to Defendant, state and federal kidnapping statutes are unambiguous that Defendant could not be charged with kidnapping. **Doc. 102 at 11 n.4.** This argument does not undermine the Court's conclusion that exigent circumstances justified the emergency requests in this case. The Court also notes Defendant advanced a similar argument in his Second Motion to Suppress, which the Court will resolve in a separate order.

whereabouts. Accordingly, the Court concludes that the scope of the warrantless search was "commensurate with" the exigency justifying the search. *Marshall*, 345 F.3d at 1172. Since both prongs of the exigent circumstance test are met, the Court holds that the data requests were constitutional because, even assuming the requests were searches, exigent circumstances justified the requests.[3]

## CONCLUSION

Even assuming the FBI conducted a warrantless search of Defendant's location data, the search was justified by exigent circumstances: Jane Doe had been missing for at least 24 hours and had been last seen with Defendant, who was giving friends, family, and law enforcement officers conflicting information about her whereabouts. The Court therefore **DENIES** Defendant's First Motion to Suppress.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the Court agrees exigent circumstances exempt the search from the warrant requirement, the Court need not address the Government's alternative arguments that even if the search was unreasonable, the evidence need not be suppressed because of the independent source doctrine and the good faith exception.