## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

------------------------

UNITED STATES OF AMERICA,

      Plaintiff,

                                        No. 1:19-cr-3333-WJ

   v.

MALCOLM TORRES,

      Defendant,

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS

**THIS MATTER** is before the Court on Defendant's Second Motion to Suppress (**Doc. 103**). The Court held hearings on Defendant's Motion on February 27 and March 8, 2023. Defendant's motion seeks to suppress evidence collected by the FBI pursuant to search warrant 19-MR-1106[1] issued by Magistrate Judge Briones on September 9, 2019. The warrant authorized the search of Defendant's home in Espanola, New Mexico, and his white, Ford F-250 truck. Defendant moves to suppress all evidence collected pursuant to this allegedly defective warrant. In the oral affidavit for the search warrant, FBI Special Agent Samuel Reed Hanks represented to Magistrate Judge Briones that Mr. Torres was Jane Doe's stepfather and that he and Jane Doe's mother, V.M., shared custody of Jane Doe and her little brother. The search warrant was issued based on probable cause of federal kidnapping. Defendant contends probable cause could not support the search warrant because the agent could not have reasonably believed Defendant committed the crime under investigation because the federal kidnapping statute exempts parents, including stepparents, from this charge.

------------------------

[1] In the Matter of the Search of: Residence at 1046 Arch Lane, Espanola, New Mexico, and white truck with license plate AKAH69 and VIN 1FTHX25G3RKB08646. **Doc. 103, Ex. A at 15.**

Having considered the written and oral arguments of counsel as well as the evidence presented at the two hearings, the Court **DENIES** Defendant's Motion (**Doc. 103**). The Court denies the motion for two independent reasons: (1) the parental exception need not bear on the probable-cause determination because the exception's applicability was not readily apparent from the facts in the oral affidavit; and (2) the parental exception is immaterial; there was probable cause of kidnapping and probable cause that evidence of that crime could be found in Defendant's home and truck; thus, it did not matter if the agent lacked probable cause that Defendant himself committed the crime because probable cause to search property does not require probable cause that the property owner committed the crime under investigation.

**BACKGROUND[2]**

At 7:39 p.m. on Sunday, September 8, 2019, Jane Doe's mother, V.M., called the Rio Arriba County Sheriff's Office to report her daughter was missing. **Doc. 103, Ex. A at 3**. Jane Doe had been in the care of Mr. Torres. *Id.* **at 4.** FBI Agent Hanks told the magistrate judge that Mr. Torres was Jane Doe's "stepfather" and that Jane Doe's "biological father is not in the picture." *Id.* **at 4-5.** However, according to the agent, V.M. and Mr. Torres shared custody of their 18-month-old son and Jane Doe, alternating custody each week. *Id.* **at 4**. Mr. Torres and V.M. were separated, and a restraining order prohibited direct contact between V.M. and Mr. Torres. *Id.* Due to the restraining order, Mr. Torres and V.M. coordinated custody of Jane Doe and her little brother through Mr. Torres's grandmothers, Ms. Aguirre and Ms. Archuleta. *Id.* **at 5.** According to V.M., Mr. Torres "had often beat [V.M.], sometimes in front of the children." *Id.* **at 6.**

---

[2] The background facts are taken from the transcript of the oral affidavit given by FBI Special Agent Samuel Reed Hanks to Magistrate Judge Briones on Monday September 9, 2019. These are the pertinent facts for this motion because they are the facts the magistrate judge relied on in issuing the challenged search warrant. The transcript of the oral affidavit is attached to Defendant's Second Motion to Suppress. *See* **Doc. 103, Ex. A.**

Initially the children were scheduled to return to their mother's care on Friday, September 6, 2019. *Id.* **at 5**. But Mr. Torres's grandmother—Ms. Aguirre—took Mr. Torres and the children to Los Alamos to go shopping on Friday evening. *Id.* Ms. Aguirre called Jane Doe's mother and requested the children stay with Mr. Torres for an additional day. *Id.* V.M. agreed. *Id.* The following day— Saturday—Aubrey Montoya, a friend of Mr. Torres's—visited his home between 3:30 and 5:00 p.m. and saw the kids playing inside. *Id.* While Ms. Montoya was there, Mr. Torres called Ms. Aguirre and told her he had been drinking and could not take the kids to get food. *Id.* At the time of the oral affidavit, Ms. Montoya appeared to be the last person—besides Mr. Torres—to have seen Jane Doe.

After Ms. Montoya left, Ms. Aguirre came over, picked up money for food, and went to buy food for Mr. Torres and the kids. *Id.* When Ms. Aguirre picked up the money and when she dropped off the food, Mr. Torres met her outside and told her the kids were sick and she could not come in. *Id.* At Mr. Torres's request, Ms. Aguirre called V.M. to request another day with the kids. *Id.* V.M., again, agreed. *Id.* According to Mr. Torres, he put the kids to bed at around 8:00 – 8:30 p.m. on Saturday night. *Id.* That evening, Shane Binion—another friend of Mr. Torres's—received a text message from him saying Mr. Torres needed his help. *Id.* Mr. Binion did not respond until the next day, Sunday, September 8, 2019. *Id.*

On Sunday, Mr. Binion brought Mr. Torres alcohol at approximately 11:30 a.m. *Id.* When Mr. Binion arrived, Mr. Torres was already drunk, rambling, and making comments like, "She's gone," and mentioning "Santa Clara" and "a river." *Id.* **at 6**. Mr. Binion did not see Jane Doe, and he heard the little boy asking for his sister. *Id.* Mr. Binion changed the little boy's diaper and left. *Id.* At 5:00 p.m., Mr. Torres again texted Binion saying, "We need to talk." *Id.* Mr. Binion told officers that "Torres was a drunk, could be violent, and could have harmed the girl." *Id.* Mr. Binion had also

suggested, "There were a lot of issues in the home" and that "Torres resented having to take care of [Jane Doe]" and V.M. "didn't want her either." *Id.*

At approximately 6:00 p.m., Mr. Torres's other grandparents—Mr. and Ms. Archuleta—who live in the same residence as Mr. Torres, returned home. *Id.* at 4. Mr. Torres informed them Jane Doe had been missing since 9:30 a.m. that morning. *Id.* Later, Mr. Torres told law enforcement that when he noticed Jane Doe was missing, he called outside and checked the immediate neighborhood before returning home and resuming drinking heavily. *Id.* at 4.

Upon hearing that Jane Doe was missing, Ms. Archuleta told Jane Doe's mother, who immediately called the police. *Id.* Soon after telling his grandparents of Jane Doe's disappearance, Mr. Torres left the house in his truck. *Id.* Law enforcement later found him asleep in his truck in a commercial parking lot. *Id.* At that time, he was arrested for unrelated state probation violations, and his truck was secured by the Rio Arriba County Sheriff's Office. *Id.*

The following day—Monday, September 9, 2019—FBI Special Agent Hanks sought a warrant from Magistrate Judge Briones to search Mr. Torres's home and his truck. In support of this warrant, Agent Hanks provided an oral affidavit in which he explained the above information in detail. When asked what crime he was investigating, Agent Hanks responded "Eighteen United States Code 1201 kidnapping." *Id.* at 7. Magistrate Judge Briones found probable cause for the crime of kidnapping as well as probable cause to search Defendant's residence at 1046 Arch Lane in Espanola, New Mexico, and to search Defendant's white Ford F-250. *Id.* at 9. A search warrant was issued. At that time, Jane Doe was still missing. Jane Doe's body was found two days later in the Rio Grande River.

The search warrant for Defendant's truck was executed at 8:50 a.m. on September 8, 2019. Part of a child's dress and stained floorboard carpet were seized from the truck. **Doc. 103, Ex. A at 16.** It is unclear based on the record when the residence was searched. Defendant Torres moves to suppress

all evidence seized from his home and truck pursuant to the search warrant. Defendant contends the search warrant is defective because the Defendant could not—as a matter of law—have kidnapped his stepdaughter; therefore, according to Defendant, "because Mr. Torres could not kidnap [Jane Doe] there was no reasonable basis to conclude that evidence of the crime could be found in his home or vehicle." **Doc. 103 at 5**. The Court is not persuaded; Defendant's Motion to Suppress is therefore **DENIED**.

## DISCUSSION

### A.    Standard of Review

"A defendant who moves to suppress evidence obtained through a search with a warrant bears the initial burden of establishing that the search was illegal." *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). The United States Supreme Court has expressed a "strong preference" for warrants and has accordingly given magistrate-judge determinations of probable cause "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984). However, courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* at 915 (citation omitted).

To determine whether a search warrant is supported by probable cause, the Court must assess whether based on the totality of the circumstances articulated in the affidavit "the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) (citation omitted). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Probable cause also requires "a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

At the February 27 hearing, the Government and Defendant notified the Court they had conferred and agreed that the only facts the Court should consider when deciding Defendant's Motion are those contained within the four corners of the oral warrant affidavit that the magistrate judge relied on to issue the search warrant for Defendant's home and truck. The Court agrees. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.").

**B.      The Parental Exception to the Federal Kidnapping Statute**

As an initial matter, Defendant is correct that the federal kidnapping statute exempts parents of minor children from prosecution, including stepparents with custody. The statute reads: "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof* . . . ." 18 U.S.C. § 1201(a) (emphasis added). The statute does not specify who qualifies as a "parent"; however, the statute makes clear "the term 'parent' does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order." *Id.* § 1201(h). The Tenth Circuit has held the term "parent" for the purposes of the federal kidnapping statute includes stepparents with custody. *United States v. Floyd*, 81 F.3d 1517, 1520 (10th Cir. 1996).

**I.      Parental Exception Has No Bearing on Whether Probable Cause Existed to Issue the Search Warrant.**

The Government does not disagree as a matter of law that a stepfather with custody could fall under the parental exception to kidnapping; rather, the Government disagrees that—based on the facts articulated in the affidavit—it was readily apparent to the FBI agent at the time of the affidavit that the parental exception would apply to Mr. Torres. The Court agrees and denies Defendant's motion on these grounds. The Court also finds denial of Defendant's motion appropriate because probable

cause to search Defendant's home and truck existed regardless of whether probable cause existed that Defendant committed the crime of kidnapping. The Court addresses each reason for denial in turn.

### A.  Parental Exception Has No Bearing on Whether Probable Cause Existed Because the Exception's Applicability Was Not Readily Apparent from the Oral Affidavit's Facts.

The Government contends the search warrant is valid because the parental exception was not readily apparent to FBI Special Agent Hanks or Magistrate Judge Briones based on the facts in the oral search warrant affidavit. For this argument, the Government relies primarily on the Tenth Circuit case *United States v. Rodriguez*, 739 F.3d 481 (10th Cir. 2013), where the panel held that statutory exceptions "need not bear upon an investigating officer's initial determination of reasonable suspicion where the exception's applicability would not be readily apparent to a prudent officer prior to the suspect's seizure." *Id.* at 488.

For the holding in *Rodriguez* to apply, the Court must find the statutory exception—here, the parental exception—to be an affirmative defense rather than an element of the crime of kidnapping. The parties disagree on this issue; however, the Court has little difficulty concluding the parental exception is an affirmative defense because it can be omitted from the kidnapping statute "without doing violence to the definition of the offense," and there is no "discernible legislative intent to the contrary." *Rodriguez*, 739 F.3d at 488. To illustrate this point, the Court strikes the parental exception from the kidnapping statute: "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, ~~except in the case of a minor by the parent thereof~~…." 18 U.S.C. § 1201(a) (strike-through added). The definition of kidnapping is not altered by the exception's omission. The Court also notes the Tenth Circuit's Pattern Jury Instruction for kidnapping does not include the parental exception as an element of the crime. *See* 10th Cir. Pattern Jury Instruction 2.55. The Court is satisfied that the parental exception is an

affirmative defense, not an element of kidnapping. With that resolved, the Court proceeds to the substance of the Tenth Circuit's decision in *Rodriguez*.

In *United States v. Rodriguez*, officers responded to a call that two employees at a convenience store in a high-crime area were showing each other handguns. 739 at 483. Officers arrived on scene and observed a store employee bent over, stocking shelves, with a silver handgun tucked into the waistband of his pants, concealed by his shirt. *Id.* at 483-84. The officers conducted a *Terry* stop, seized the handgun, and ran a check on the gun. *Id.* at 484. The check revealed the gun was stolen. *Id.* It was later discovered the defendant was a convicted felon; the defendant was charged with felon in possession of a firearm and ammunition. *Id.* The defendant filed a motion to suppress, which the district court denied. *Id.*

On appeal, the defendant argued the gun should have been suppressed because the officers unreasonably conducted a *Terry* stop based on his concealed firearm. *Id.* 484-85. Specifically, the defendant argued that instead of seizing him the officers should have asked him some questions to ensure none of the statutory exceptions to New Mexico's prohibitions on carrying a concealed handgun would apply. *Id.* at 489. For example, the defendant posited the officers should have asked whether he had a concealed carry permit—which is one of the statutory exceptions. *Id.* The Tenth Circuit rejected defendant's argument and upheld the search because "where a police officer in New Mexico has personal knowledge that an individual is carrying a concealed handgun, the officer has reasonable suspicion that [a suspect was unlawfully carrying a firearm] absent a readily apparent exception to [the statute's] prohibition." *Id.* at 490-91. The panel reasoned, statutory exceptions "need not bear upon an investigating officer's initial determination of reasonable suspicion where the exception's applicability would not be readily apparent to a prudent officer prior to the suspect's seizure." *Id.* at 488. Thus, because it was not readily apparent whether the defendant had a concealed

carry permit—or that another exception applied—the officers were not required to inquire into potential exceptions before stopping and frisking the defendant and seizing his firearm. *Id.* at 489-90.

Although *Rodriguez* dealt with reasonable suspicion, the Government urges the Court to apply the same reasoning to the probable-cause determination in this case. The Court is persuaded and concludes that the parental exception had no bearing on the agent's or magistrate judge's determination of probable cause to search Defendant's house and truck because the exception's applicability was not "readily apparent" from the facts contained within the oral affidavit.

**1.   The Parental Exception Was Not Readily Apparent from the Oral Affidavit.**

According to Defendant, "There is simply no reasonable reading of the affidavit that leads to the conclusion there was probable cause for this [kidnapping] offense." **Doc. 103 at 4-5.** To support this conclusion, Defendant points to Agent Hanks's statements to Magistrate Judge Briones that Jane Doe had been "in the care of her stepfather, Malcolm Torres, at the time she went missing," **doc. 103, Ex. A at 4**, and that although Jane Doe's mother, V.M., and Mr. Torres are "separated, and there is a restraining order prohibiting direct contact between" them, the two "share custody of their 18-month-old son and [Jane Doe], alternating custody each week," *id.* If those were the only facts in the affidavit, perhaps Defendant's argument would have some merit—but those are not the only facts.

First, the affidavit made clear that Mr. Torres was not Jane Doe's biological father: the agent repeatedly referred to Jane Doe as Mr. Torres's "stepdaughter" and stated that Jane Doe's "biological father is not in the picture." *Id.* 4-5. The affidavit also contained facts that Jane Doe's mother, V.M., told officers "Torres had often beat [V.M.], sometimes in front of the children." *Id.* **at 6.** The volatile relationship between V.M. and Defendant is also evidenced by the agent's statements that "there is a restraining order prohibiting direct contact between [V.M.] and Torres" and that "[d]ue to the restraining order, Torres and [V.M.] coordinate custody through Torres' grandmothers." *Id.* **4, 5.**

Finally, the affidavit contains facts that Defendant's friend, Shane Binion, told officers "Torres was a drunk, could be violent, and could have harmed the girl." *Id.* **at 6.** Mr. Binion had also suggested, "There were a lot of issues in the home" and that "Torres resented having to take care of [Jane Doe]" and V.M. "didn't want her either." *Id.*

Although some of the facts suggest the parental exception *might* apply, read as a whole, the affidavit does not make the parental exception "readily apparent." As the Government points out, whether a person is acting *in loco parentis*— "in the place of a parent"—for the purposes of the parental exception to the federal kidnapping statute is a fact-specific inquiry. The Tenth Circuit has held that *in-loco-parentis* status "is created when a person undertakes the care of a child" and "ends when a person voluntarily ceases to fulfill this responsibility." *United States v. Floyd*, 81 F.3d 1517, 1524 (10th Cir. 1996). *In loco parentis* status is "temporary" and "voluntary," thus, a Court must consider whether the person "continued to fulfill the responsibilities of a parent at the time of the [alleged] kidnapping." *Id.* The responsibilities of a parent include: "bestowing upon the child love, affection, support, maintenance, instruction, discipline, and guidance." *Id.* Running the facts from the oral affidavit through the Tenth Circuit's *in-loco-parentis* test, it is not clear—let alone "readily apparent"—that Defendant would fall under the parental exception.

The Court notes that the agent's discussion of Jane Doe as Defendant's "stepdaughter" and the agent's discussion of the "shared custody" agreement between V.M. and Defendant could weigh in favor of the parental exception applying. However, in light of the Tenth Circuit's explicit instruction to consider whether Defendant bestowed on Jane Doe "love, affection, support, maintenance, instruction, discipline, and guidance," it becomes far less clear whether the parental exception applies. Jane Doe's mother told officers "Torres had often beat [V.M.], sometimes in front of the children," and Mr. Binion told officers "Torres was a drunk, could be violent, and could have harmed the girl"

and that "Torres resented having to take care of [Jane Doe]." **Doc. 103, Ex. A at 6.** These facts strongly cut against a finding that the parental exception was readily apparent. Because the applicability of the parental exception was not readily apparent from the facts in the oral affidavit, the Court denies Defendant's Second Motion to Suppress.[3] Although this basis for denying Defendant's motion is sufficient, the Court finds there is another, equally strong basis on which the motion can be denied.

**B. Probable Cause to Search Defendant's Home and Truck Existed Regardless of Whether There Was Probable Cause Defendant Committed Kidnapping.**

Defendant Torres argues there was no probable cause to issue the search warrant for his home and truck because probable cause did not exist that he committed the crime of kidnapping. Defendant's argument erroneously conflates whether there was probable cause that he committed the crime of kidnapping—i.e., whether there would be probable cause to arrest Defendant for that crime—with whether there was probable cause to search Defendant's property for evidence of the crime of kidnapping. Probable cause for a search warrant is distinct from probable cause for an arrest warrant, and this distinction matters.

"Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found *in a particular place*." *Basham*, 268 F.3d at 1203 (citation omitted) (emphasis added). Probable cause also requires "a nexus between suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1005-06 (10th Cir. 2000). But probable cause "is not a precise quantum of evidence." *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017). "Rather, the

---

[3] Certainly a meritorious argument could be advanced concerning whether the Defendant qualifies as a step parent with custody considering that he was not married to the child's mother and there was a domestic violence restraining order in place; however, since such considerations go outside the oral affidavit of the officer, it would not be proper for the Court to consider more than what was presented to the Magistrate Judge issuing the search warrant.

relevant question is whether there was a 'substantial probability'—'something more than a bare suspicion'—that the person or property was involved in a crime." *Id.*

The Supreme Court has held, "Search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (brackets and internal quotation marks omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of [the] crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.* at 556. "[C]ourts may not . . . prohibit the States from issuing warrants to search for evidence simply because the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement." *Id.* at 560. "Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime." *Id.* at 558 (citation and brackets omitted). In keeping with this reasoning, the Tenth Circuit has held: "we know of no authority that officers cannot search a place where there is likely to be contraband or evidence of a crime unless they can identify the likely perpetrator." *United States v. Long*, 774 F.3d 653, 659 (10th Cir. 2014).

Because, at the time of the oral affidavit, there was a fair probability the crime of kidnapping occurred *and* a fair probability evidence of that crime would be found in Defendant's home and truck, Magistrate Judge Briones properly issued the search warrant. Contrary to Defendant's contentions, it is immaterial whether there was probable cause that he himself committed the crime of kidnapping. *See United States v. Artez*, 389 F.3d 1106, 1113-14 (10th Cir. 2004) ("Whether [Deputy Sheriff] did or did not have reason to connect Defendant personally to the transactions is irrelevant to our probable

cause analysis."). The affidavit provided a substantial basis for the agent and the magistrate judge to find probable cause for kidnapping and probable cause that evidence of kidnapping could be found in Defendant's home and truck. The Court defers to Magistrate Judge Briones's decision and upholds the search warrant.

### 1. Facts Supporting Kidnapping:

When the search warrant issued, Agent Hanks was investigating the crime of kidnapping. The affidavit gave Magistrate Judge Briones a substantial basis on which to conclude Jane Doe had been kidnapped. The affidavit explained that Mr. Torres had told officers Jane Doe had been missing since approximately 9:00 or 9:30 a.m. on Sunday, September 8, 2019, the day before the search warrant. When Mr. Torres discovered Jane Doe was missing, he told officers he called outside and checked the immediate neighborhood before returning home, where he resumed drinking heavily. Mr. Torres did not inform anyone that Jane Doe was missing until 6:00 p.m. that night when he told his grandparents. Although Defendant claimed—at the time of the affidavit—that Jane Doe had gone missing at 9:00 a.m. on September 8, no one other than the Defendant had seen Jane Doe since 5:00 p.m. the previous day. And, on Sunday, Mr. Torres's friend Mr. Binion had stopped by the house at around 11:30 a.m. and found Mr. Torres very drunk and making comments like, "She's gone," and mentioning "Santa Clara" and "a river." These facts support probable cause for the crime of kidnapping.

### 2. Facts Supporting Evidence of Kidnapping Could Be Found in Defendant's Home

According to the affidavit, Jane Doe was in Defendant's care during the relevant period. Three people told law enforcement that they had interacted with Defendant at his home during the relevant weekend: On Saturday, September 7, 2019, Mr. Torres's friend Aubrey Montoya visited Defendant's home between 3:30 and 5:00 p.m. and saw the kids playing inside. Later that same day, Ms. Aguirre—Defendant's grandmother—also saw Defendant at his home when she brought food for him and the

kids. Mr. Torres met her outside and told her the kids were sick and she could not come in. The fact Jane Doe was last seen in Defendant's home and that Defendant denied his grandmother entry into the house because the kids were allegedly sick suggests evidence related to Jane Doe's kidnapping could be found there.

### 3. Facts Supporting Evidence of Kidnapping Could be Found in Defendant's Truck

The facts supporting probable cause to search Defendant's truck are fewer, but still sufficient. According to the affidavit, at approximately 6:00 p.m. on Sunday night, Mr. Torres's grandparents, who lived in the same residence as Mr. Torres, returned home. Mr. Torres informed them Jane Doe had been missing since approximately 9:30 that morning. Soon after telling his grandparents of Jane Doe's disappearance, Mr. Torres left the house in his truck. According to the affidavit, law enforcement later found him in his truck asleep in a commercial parking lot. Mr. Torres was arrested for unrelated state probation violations, and his truck was secured. The fact Defendant told his grandparents Jane Doe was missing and then immediately left in his truck could lead "a prudent person to believe there [was] a fair probability" that "evidence of a crime" would be found in his truck. *Basham*, 268 F.3d at 1203.

In sum, the Court concludes the magistrate judge properly found probable cause for kidnapping and probable cause to search defendant's home and truck.

### CONCLUSION

The Court **DENIES** Defendant's Second Motion to Suppress (**Doc. 103**) because (1) the parental exception need not bear on the probable-cause determination where the exception's applicability was not readily apparent from the facts in the oral affidavit; and (2) the parental exception is immaterial because there was probable cause of kidnapping and probable cause that evidence of the crime could be found in Defendant's home and truck.

**IT IS SO ORDERED.**

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**